No. 24-2874

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MURAT KURASHEV,

Defendant-Appellant.

————————————

On Appeal from the United States District Court
for the Eastern District of California
(Hon. Kimberly J. Mueller, No. 2:21-CR-40-KJM)

————————————

## ANSWERING BRIEF OF THE UNITED STATES

————————————

KIMBERLY A. SANCHEZ
  *Acting United States Attorney*
  *Eastern District of California*

HEIKO P. COPPOLA
  *Assistant U.S. Attorney*

JOHN A. EISENBERG
  *Assistant Attorney General*
  *for National Security*

JOSEPH P. MINTA
GAVAN W. DUFFY GIDEON
  *Attorneys, Appellate Section*
  *National Security Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW*
  *Washington, DC 20530*
  *(202) 320-0621*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF JURISDICTION ....................................................................... 2

STATEMENT OF THE ISSUES ............................................................................ 2

BAIL STATUS ........................................................................................................ 2

STATEMENT OF THE CASE ................................................................................ 3

     A.     Factual Background ................................................................... 3

     B.     Procedural Background ............................................................. 8

SUMMARY OF ARGUMENT ............................................................................... 12

STANDARD OF REVIEW ..................................................................................... 13

ARGUMENT ........................................................................................................... 14

I.     The District Court Correctly Applied U.S.S.G. § 3A1.4 ................................ 14

     A.     The district court did not clearly err in finding specific intent ............... 14

     B.     The Syrian government led by Assad was a "government" .................... 19

     C.     Amicus's policy objections are irrelevant to the question presented ...... 26

II.     The District Court Did Not Commit Procedural Error ..................................... 28

CONCLUSION ........................................................................................................ 31

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page(s)**

*Anderson v. City of Bessemer City,*
470 U.S. 564 (1985) ............................................................................. 18

*Cochise Consultancy, Inc. v. United States ex rel. Hunt,*
587 U.S. 262 (2019) ............................................................................. 24

*Gallardo ex rel. Vassallo v. Marstiller,*
596 U.S. 420 (2022) .......................................................................22, 23

*In re Perez,*
30 F.3d 1209 (9th Cir. 1994) ............................................................... 29

*Puckett v. United States,*
556 U.S. 129 (2009) ............................................................................. 13

*Shular v. United States,*
589 U.S. 154 (2020) ............................................................................. 23

*United States v. Alexander,*
287 F.3d 811 (9th Cir. 2002),
*abrogated by United States v. Plouffe,* 445 F.3d 1126 (9th Cir. 2006) ............................... 22

*United States v. Alhaggagi,*
978 F.3d 693 (9th Cir. 2020) ...............................................15, 16, 17, 18, 19

*United States v. Ali,*
799 F.3d 1008 (8th Cir. 2015) .......................................................17, 21, 27

*United States v. Ansberry,*
976 F.3d 1108 (10th Cir. 2020) ........................................................... 22

*United States v. Arcila Ramirez,*
16 F.4th 844 (11th Cir. 2021) .........................................................30, 31

*United States v. Assi,*
428 F. App'x 570 (6th Cir. 2011) (unpub.)........................................21, 25

*United States v. Awan,*
607 F.3d 306 (2d Cir. 2010) ................................................................ 15

*United States v. Barlow,*
83 F.4th 773 (9th Cir. 2023) ................................................................ 18

*United States v. Blackshire,*
98 F.4th 1146 (9th Cir. 2024) .............................................................. 13

*United States v. Blanco,*
102 F.4th 1153 (11th Cir. 2024) .......................................................... 15

*United States v. Carty*,
520 F.3d 984 (9th Cir. 2008) (en banc) ........................................................ 29

*United States v. Castillo*,
69 F.4th 648 (9th Cir. 2023) .......................................................................... 20

*United States v. Cox*,
963 F.3d 915 (9th Cir. 2020) .......................................................................... 21

*United States v. DeAmaris*,
406 F. Supp. 2d 748 (S.D. Tex. 2005) ............................................................ 23

*United States v. Dominguez Benitez*,
542 U.S. 74 (2004) ......................................................................................... 13

*United States v. Ehmer*,
87 F.4th 1073 (9th Cir. 2023),
*abrogated by United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (en banc) ..14, 15, 16

*United States v. Fidse*,
778 F.3d 477 (5th Cir. 2015) .......................................................................... 31

*United States v. Garcia-Jimenez*,
623 F.3d 936 (9th Cir. 2010) .......................................................................... 23

*United States v. Giampietro*,
614 F. Supp. 3d 612 (M.D. Tenn. 2022) ........................................................ 21

*United States v. Gomez*,
115 F.4th 987 (9th Cir. 2024),
*reh'g en banc granted, opinion vacated*, 133 F.4th 1083 (9th Cir. 2025) (mem.) ............... 20

*United States v. Gonzalez-Aparicio*,
663 F.3d 419 (9th Cir. 2011) .......................................................................... 29

*United States v. Herrera*,
974 F.3d 1040 (9th Cir. 2020) ...................................................................13, 19

*United States v. Jayyousi*,
657 F.3d 1085 (11th Cir. 2011) ...................................................................... 27

*United States v. Jordan*,
256 F.3d 922 (9th Cir. 2001),
*overruled by United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (en banc) ............. 16

*United States v. Kasimov*,
No. 22-1329, 2024 WL 4541061 (2d Cir. Oct. 22, 2024) (unpub.) ............................ 21

*United States v. Khan*,
938 F.3d 713 (5th Cir. 2019) .......................................................................... 21

*United States v. Kurns*,
129 F.4th 589 (9th Cir. 2025) ........................................................................ 16

*United States v. Lucas,*
  101 F.4th 1158 (9th Cir. 2024) (en banc) ................................................. 14, 16
*United States v. Mehanna,*
  735 F.3d 32 (1st Cir. 2013) ...................................................................... 4
*United States v. Mercado-Moreno,*
  869 F.3d 942 (9th Cir. 2017) ................................................................... 8
*United States v. Meskini,*
  319 F.3d 88 (2d Cir. 2003) ...................................................................... 27
*United States v. Olano,*
  507 U.S. 725 (1993) ........................................................................... 13, 19
*United States v. Pugh,*
  945 F.3d 9 (2d Cir. 2019) ........................................................................ 4
*United States v. Ressam,*
  679 F.3d 1069 (9th Cir. 2012) (en banc) .................................................. 27
*United States v. Rodriguez-Castro,*
  641 F.3d 1189 (9th Cir. 2011) ................................................................. 30
*United States v. Rubalcaba,*
  811 F.2d 491 (9th Cir. 1987) ................................................................... 29
*United States v. Salim,*
  549 F.3d 67 (2d Cir. 2008) ...................................................................... 23
*United States v. Sandoval-Orellana,*
  714 F.3d 1174 (9th Cir. 2013) ................................................................. 28
*United States v. Sharma,*
  119 F.4th 1141 (9th Cir. 2024) ............................................................... 26
*United States v. Sherifi,*
  107 F.4th 309 (4th Cir. 2024) ................................................................. 28
*United States v. Siddiqui,*
  699 F.3d 690 (2d Cir. 2012) .................................................................... 15
*United States v. Smith,*
  424 F.3d 992 (9th Cir. 2005) ................................................................... 19
*United States v. Stewart,*
  590 F.3d 93 (2d Cir. 2009) ...................................................................... 21
*United States v. Tankersley,*
  537 F.3d 1100 (9th Cir. 2008) ................................................................. 26
*United States v. Torres,*
  995 F.3d 695 (9th Cir. 2021) ................................................................... 24
*United States v. Wijegoonaratna,*
  922 F.3d 983 (9th Cir. 2019) ................................................................... 29

*United States v. Yijun Zhou,*
    838 F.3d 1007 (9th Cir. 2016) ........................................................ 20
*Zango, Inc. v. Kaspersky Lab, Inc.,*
    568 F.3d 1169 (9th Cir. 2009) ........................................................ 26

**Statutes**

18 U.S.C. § 11 ................................................................................... 24
18 U.S.C. § 2332b(b)(1)(C) ............................................................. 22
18 U.S.C. § 2332b(g)(5) ........................................................... *passim*
18 U.S.C. § 2332d(a) ........................................................................ 23
18 U.S.C. § 2332f(e)(12) ................................................................. 23
18 U.S.C. § 2339B(a)(1) .................................................... 1, 3, 8, 15
18 U.S.C. § 3553(a) ................................................................. 11, 28
Servicemember Quality of Life Improvement and National Defense Authorization
    Act for Fiscal Year 2025, Pub. L. No. 118-159, 138 Stat. 1773 ................ 22

**Sentencing Guidelines**

U.S.S.G. § 2M5.3 ............................................................................. 10
U.S.S.G. § 2X1.1 .............................................................................. 10
U.S.S.G. § 3A1.4 ...................................................................... *passim*

**Dictionaries**

The American Heritage Dictionary of the English Language (4th ed. 2000) ................ 4
Oxford English Dictionary (2d ed. 1989) ........................................ 22
Webster's Third New International Dictionary (2002) ..................... 21

**Other Authorities**

Government's Petition for Rehearing En Banc, *United States v. Gomez,*
    No. 23-435 (9th Cir. Nov. 18, 2024), Dkt. 45 .......................... 20
In the Matter of the Amendment of the Designation of Al-Nusrah Front
    (and Other Aliases), as Amended, 83 Fed. Reg. 25497,
    2018 WL 2441902 (June 1, 2018) .......................................... 3, 4
Notice of OFAC Sanctions Action, 86 Fed. Reg. 46087,
    2021 WL 3617617 (Aug. 17, 2021) ............................................. 5
Order, *United States v. Gomez,*
    No. 23-435 (9th Cir. Apr. 17, 2025), Dkt. 52 ........................... 20

Press Statement, Secretary of State Marco Rubio, Revoking the Foreign Terrorist
    Organization Designation of Hay'at Tahrir al-Sham (July 7, 2025),
    https://www.state.gov/releases/office-of-the-spokesperson/2025/07/revoking-
    the-foreign-terrorist-organization-designation-of-hayat-tahrir-al-sham/ ................... 4

Revocation of the Foreign Terrorist Organization Designation of al-Nusrah Front,
    Also Known as Hay'at Tahrir al-Sham, 90 Fed. Reg. 30187,
    2025 WL 1865601 (July 8, 2025) ...................................................................... 4

## INTRODUCTION

Defendant-Appellant Murat Kurashev sent thousands of dollars to a terrorist fundraiser in Syria, knowing that the fundraiser was raising money to support a designated terrorist organization's fight against the Syrian government. Based on that conduct, Kurashev pleaded guilty to one count of attempting to provide material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1), and was sentenced to 144 months of imprisonment.

While Kurashev does not contest his guilt, he claims that the district court erred in applying a sentencing enhancement for offenses that involve a "federal crime of terrorism," as defined in 18 U.S.C. § 2332b(g)(5). But the district court reasonably found that Kurashev's offense satisfied the statutory definition because his donations were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *Id.* § 2332b(g)(5)(A). Kurashev identifies no clear error in that finding, which was based largely on communications between him and the terrorist fundraiser.

Kurashev raises additional arguments against the enhancement on appeal—claiming that the Syrian government was not a "government" for purposes of Section 2332b(g)(5)(A), and that the district court did not adequately explain its application of the enhancement. But he did not raise these claims below, so they are reviewed for plain error. And Kurashev identifies no error in his sentencing, plain or otherwise. It is undisputed that the term "government" in Section 2332b(g)(5)(A) includes foreign

1

governments, and the Syrian government led by President Bashar al-Assad satisfied the ordinary meaning of "government." Kurashev provides no basis on which to override Section 2332b(g)(5)(A)'s plain text, or to adopt the novel, unworkable interpretation he advances. And, contrary to Kurashev's second new claim, the district court clearly and correctly explained its finding under Section 2332b(g)(5)(A); Kurashev simply disagrees with the result the court reached.

This Court should accordingly affirm Kurashev's sentence.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. It entered judgment on May 2, 2024. 1-ER-2. Kurashev filed a timely notice of appeal. 2-ER-84. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the district court abused its discretion in applying U.S. Sentencing Guidelines § 3A1.4 based on its finding that Kurashev's offense involved a "federal crime of terrorism," as defined in 18 U.S.C. § 2332b(g)(5).

2.    Whether the district court committed plain procedural error in applying U.S.S.G. § 3A1.4 by failing to adequately explain its finding of intent under 18 U.S.C. § 2332b(g)(5)(A).

## BAIL STATUS

Kurashev is in custody serving a 144-month sentence. 1-ER-3. His projected release date is August 25, 2031.

2

## STATEMENT OF THE CASE

Kurashev is a Russian national without lawful status in the United States.  PSR ¶¶ 58, 63–64.  He entered the United States with his family in December 2018 and began renting an apartment in Sacramento shortly thereafter.  PSR ¶ 63.  Between July 2020 and February 2021, Kurashev used money transfer services to send $13,000 to a fundraiser for Hay'at Tahrir al-Sham (HTS), which was a designated foreign terrorist organization in Syria.  2-ER-151–52; PSR ¶ 27.  Based on those donations, Kurashev pleaded guilty to one count of attempting to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1).  1-ER-2.  At sentencing, the district court found that Kurashev's offense involved a federal crime of terrorism, triggering application of the sentencing enhancement at U.S.S.G. § 3A1.4.  1-ER-45. The district court sentenced Kurashev to 144 months of imprisonment.  1-ER-3.

### A.    Factual Background

HTS was a Syrian Islamist insurgent group that traced its origins to a branch of al Qaeda.  PSR ¶ 6; SER-19.  During the Syrian civil war, HTS fought the Syrian government led by President Bashar al-Assad, engaging in bombings, kidnappings, and assassinations.  PSR ¶ 6; SER-18–19.  In 2018, the U.S. Department of State designated HTS a foreign terrorist organization.  PSR ¶ 6; *see* In the Matter of the

3

Amendment of the Designation of Al-Nusrah Front (and Other Aliases), as
Amended, 83 Fed. Reg. 25497, 2018 WL 2441902 (June 1, 2018).[1]

Farrukh Fayzimatov is a Tajik national who served as a fundraiser, recruiter,
and propagandist for HTS. PSR ¶ 8; SER-6, SER-20. Operating from within Syria,
Fayzimatov published Russian-language propaganda for HTS on social media and a
website he managed. PSR ¶ 8; SER-22–23, SER-25–26. In videos posted on the
website, Fayzimatov provided information about HTS military operations and
interviewed HTS fighters. SER-22–23, SER-25–26. In one such video, he discussed
the costs of an HTS fighter's tactical attire and rifle and said that anyone could help
arm the mujahideen by contributing to the purchase of armor. PSR ¶ 15.[2]
Fayzimatov used his online platforms to solicit donations for HTS, telling viewers that
they could contact him directly to contribute. PSR ¶ 8; SER-33. In July 2021, the
U.S. Department of Treasury named Fayzimatov a "Specially Designated Global

---

[1] The Department of State revoked HTS's designation on July 8, 2025. *See*
Revocation of the Foreign Terrorist Organization Designation of al-Nusrah Front,
Also Known as Hay'at Tahrir al-Sham, 90 Fed. Reg. 30187, 2025 WL 1865601 (July 8,
2025). The revocation "follow[ed] the announced dissolution of HTS and the Syrian
government's commitment to combat terrorism in all its forms." Press Statement,
Secretary of State Marco Rubio, Revoking the Foreign Terrorist Organization
Designation of Hay'at Tahrir al-Sham (July 7, 2025), https://www.state.gov/releases/
office-of-the-spokesperson/2025/07/revoking-the-foreign-terrorist-organization-
designation-of-hayat-tahrir-al-sham/.

[2] "'Mujahideen' (singular: 'mujahid') is defined as 'Muslim guer[r]illa warriors
engaged in a jihad.'" *United States v. Mehanna*, 735 F.3d 32, 46 n.5 (1st Cir. 2013)
(quoting The American Heritage Dictionary of the English Language 1153 (4th ed.
2000)); *see also United States v. Pugh*, 945 F.3d 9, 16 n.2 (2d Cir. 2019) ("Mujahid means
'one who struggles' and, in the context of a jihad, 'holy warrior.'" (citation modified)).

Terrorist" based on his fundraising and recruitment for HTS. PSR ¶ 10; *see* Notice of OFAC Sanctions Action, 86 Fed. Reg. 46087, 2021 WL 3617617 (Aug. 17, 2021).

Kurashev began consuming violent extremist content online as early as March 2020. PSR ¶ 15; SER-32–33. He frequently accessed Fayzimatov's content, including an image of the decapitated head of a French teacher killed by an individual who was in contact with Fayzimatov. SER-7, SER-52. Kurashev also searched for military tactical equipment online and watched YouTube videos featuring terrorism, weapons, and other extremist content. PSR ¶¶ 17–18; SER-7, SER-51.

Kurashev started communicating with Fayzimatov using multiple social media and mobile messaging applications. PSR ¶ 12. Among other topics, the two discussed the conflict in Syria, Fayzimatov's fundraising activities, and the cost of buying a house in Syria. *E.g.*, PSR ¶¶ 21, 37. In one set of messages, after Kurashev expressed enthusiasm about a live video by Fayzimatov, Fayzimatov wrote: "If you decide to do it [invest in one of Fayzimatov's projects], trust in Allah, knowing that you are using your assets to carry out jihad." PSR ¶ 28 (alteration in original). Kurashev responded: "Yes, brother, I am trying to act with only this intent." PSR ¶ 28. Kurashev later deleted this message and others from his phone. PSR ¶ 28.

Kurashev's first known donation to Fayzimatov occurred in July 2020. PSR ¶ 27. Over the next several months, he sent money to intermediaries for Fayzimatov seventeen times, in amounts that totaled $12,970. PSR ¶¶ 20, 27. Kurashev coordinated directly with Fayzimatov regarding these transactions. PSR ¶¶ 20–22.

For example, in September 2020, when Kurashev asked Fayzimatov to whom he "should be sending money to once again," Fayzimatov named one of the intermediaries. PSR ¶ 22. Kurashev also sent $200 worth of Bitcoin directly to a digital currency wallet held by Fayzimatov. SER-45–46.

In addition to soliciting Kurashev's own donations, Fayzimatov relied on Kurashev to serve as an intermediary for donations from third parties. In October 2020, Fayzimatov identified Kurashev to an undercover U.S. law enforcement agent as someone who could receive and transmit funds on Fayzimatov's behalf. PSR ¶¶ 23–24. The agent subsequently contacted Kurashev, telling Kurashev that Fayzimatov had said "to send the money as soon as possible" and that "this money is for the front lines." PSR ¶ 25. The undercover agent sought reassurance from Kurashev that the "money will go to the brothers on jihad," to which Kurashev responded: "May Allah reward you brother. May Allah accept your diligence. Next time try to send money directly . . . without any facilitators. It is safer." PSR ¶ 26.

In December 2020, Fayzimatov told Kurashev that he needed his help identifying donors for a new project. SER-35. When Kurashev told him that it was "not easy" to find like-minded people, Fayzimatov responded: "Well, you don't actually have to basically tell them what the money is for, who it's going to." SER-35–36. Fayzimatov said that potential donors "don't necessarily have to support us" and "don't necessarily need to know who we are." SER-36.

6

During the period in which he supported Fayzimatov's fundraising efforts, Kurashev also received and sent communications regarding the ongoing fight in Syria PSR ¶ 13.  Those communications included the following:

- Kurashev received a video from Fayzimatov that included images of dead bodies on the ground.  Fayzimatov praised the deceased individuals as having "died as shaheeds, fighters protecting Syria."  SER-40–41.

- Kurashev forwarded the undercover U.S. law enforcement agent a video from Fayzimatov stating that the money they had raised allowed HTS "to purchase over 10 motorcycles for the mujahids, help over a hundred orphans and widows, and then equip over a hundred mujahids."  SER-42–43.

- Kurashev forwarded the undercover agent a message from Fayzimatov that included an image of unidentified fighters and the comments: "Equip the warrior.  He who equips the warrior, who fights in the name of Allah, will get equally rewarded as those who fight in His name."  PSR ¶ 19.  The message listed the prices of specific military items: "Weapons $430," "Ammunition Carrying Vest $20," "Uniform $30," and "Boots $30."  PSR ¶ 19.  It also provided secure contact information for Fayzimatov.  PSR ¶ 19.

- Kurashev told Fayzimatov that he wished he could join the fight in Syria as a mujahid and regretted that he could provide only financial support. PSR ¶ 13.[3]

On February 1, 2021, Kurashev conducted a Google search for "devtac ronin," believed to be a reference to a Devtac Ronin ballistic helmet. PSR ¶ 16. He then visited the following websites: bulletproofzone.com, securityprousa.com, amazon.com, devtacdesigns.com, and batmanfactor.com. PSR ¶ 16.

## B. Procedural Background

On February 18, 2021, a grand jury indicted Kurashev on one count of attempting to provide material support to HTS, in violation of Section 2339B(a)(1). 2-ER-155. He was arrested the next day and detained pending trial. CR 9, 13, 14.

The district court rejected multiple requests by Kurashev for pretrial release, CR 41, 43, 109, finding by clear and convincing evidence that Kurashev posed a danger to the people of Syria. SER-99–103. When Kurashev moved for reconsideration of the district court's detention order, the court held an evidentiary hearing to again review whether bail was appropriate. CR 121, 127, 130. At the hearing, an FBI agent testified regarding HTS and Kurashev's radicalization.

---

[3] Kurashev appears to question the veracity of this statement, *see* AOB at 11 (claiming "the basis of [the government's assertion] is unclear"), but he waived any challenge to the assertion by failing to object below. *See, e.g.*, *United States v. Mercado-Moreno*, 869 F.3d 942, 958 n.8 (9th Cir. 2017) ("A defendant waives a challenge to a presentence report by failing to object in the district court." (citation modified)).

SER-6–8, SER-17.  As the district court later noted, "[t]he defense did not present any evidence to rebut the government's expert or its evidence."  SER-8.

The district court again denied Kurashev's request for release based on a finding of dangerousness.  SER-9.  In weighing the evidence against Kurashev, the court found that while "each of [his] individual activities on their own may appear to be innocuous, taken together, the overall circumstances suggest he made efforts to cover his tracks."  SER-7.  For instance, Kurashev communicated with Fayzimatov using encrypted messaging applications and private networks; he deleted messages with Fayzimatov after sending them; and he structured his payments in small amounts "as a means of avoiding 'raising suspicions.'"  SER-7.  On one occasion, he sent two payments on the same day from two separate locations.  SER-50–51; PSR ¶ 27.  In addition, the district court found that Fayzimatov's work could not "reasonably be characterized as limited to media activism," SER-8, and that Kurashev donated "for reasons that cannot reasonably be characterized as solely motivated by a support for media activism," SER-11.  *See also id.* at SER-8 (noting that Kurashev failed "to persuasively support his contention that he was merely supporting media activism").

In January 2024, Kurashev pleaded guilty without a plea agreement.  2-ER-139, 2-ER-152.  As part of the factual basis for his plea, Kurashev admitted that he attempted to provide material support or resources to Fayzimatov, "a fundraiser for [HTS]," by sending money abroad using money transfer services.  2-ER-151–52.

9

At sentencing, the district court found that Kurashev had reason to believe the funds he sent to Fayzimatov would be used to purchase weapons, resulting in a base offense level under the U.S. Sentencing Guidelines of 28. 1-ER-31–32; *see also* U.S.S.G. §§ 2X1.1, 2M5.3. The court then considered whether Kurashev's offense involved a "federal crime of terrorism," as defined in 18 U.S.C. § 2332b(g)(5), which would trigger application of the sentencing enhancement at Section 3A1.4 of the guidelines. Kurashev argued that his offense did not satisfy Section 2332b(g)(5)'s definition because it was not "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A); *see* 1-ER-36–39; 2-ER-94–95. But the district court found that "Kurashev's own words" established the requisite intent. 1-ER-44. The court relied on Kurashev's communications with Fayzimatov that were cited by the government, including Kurashev's statement that he felt sad that he was not able to join the mujahideen. 1-ER-44. Considering all relevant communications in context, the district court found an intent to "affect[] what the Syrian government was doing and to try to undermine what the Syrian government was doing." 1-ER-45.

Application of the Section 3A1.4 enhancement increased Kurashev's offense level to 40 and his criminal history category to VI. 1-ER-45. The court then applied a three-point acceptance-of-responsibility adjustment based on Kurashev's plea. 1-ER-45. The final offense level of 37 and criminal history category of VI yielded an

10

advisory guidelines range of 360 months to life imprisonment. 1-ER-67. That range was reduced to Section 2339B(a)(1)'s statutory maximum of 240 months. 1-ER-67.

In response to Kurashev's request for a downward departure under Section 4A1.3(b) of the guidelines, the district court agreed that a criminal history category of VI "substantially overrepresent[ed] the seriousness of [his] criminal history." 1-ER-75. But instead of applying the guidelines' departure provision, the court opted to weigh Kurashev's criminal history argument in its analysis of the sentencing factors under 18 U.S.C. § 3553(a). 1-ER-75. The government argued that those factors supported the guidelines recommendation of 240 months. 1-ER-69. Kurashev, on the other hand, requested a sentence of 96 months. 1-ER-75; 2-ER-106.

Applying the Section 3553(a) factors, the district court found that it was "not possible to overstate the seriousness of the offense," noting "the steps [Kurashev] took to send money to someone who was espousing violent ideology and intent to undermine the government in Syria." 1-ER-75–76. It also said that it could not "square exactly what he was saying at the time with his position that it was only about supporting media activism." *Id.*; *see also* 3-ER-183 (rejecting "defendant's position that he sought only to support media activism or journalistic efforts"). And, given the nature of the offense, the district court highlighted the importance of general and specific deterrence. 1-ER-78. At the same time, the court noted as mitigating factors Kurashev's lack of criminal history and a series of self-education courses that he had taken while incarcerated. 1-ER-76–78. Balancing all those considerations, the court

varied downward from the guidelines recommendation, sentencing Kurashev to 144 months of imprisonment, followed by three years of supervised release.  1-ER-79.

## SUMMARY OF ARGUMENT

**I.**     The district court correctly applied U.S.S.G. § 3A1.4.  Section 3A1.4 directs district courts to increase a defendant's offense level and criminal history category when the offense at issue involved a "federal crime of terrorism," as defined in 18 U.S.C. § 2332b(g)(5).  Kurashev argues that his donations were not "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."  18 U.S.C. § 2332b(g)(5)(A).  But the district court reasonably rejected that argument in light of record evidence that Kurashev knew HTS was a designated terrorist organization, knew HTS was fighting the Syrian government, knew Fayzimatov raised money to support HTS's violent insurgent activities, and sought to further Fayzimatov's fundraising efforts.  Kurashev identifies no error, let alone clear error, in the district court's finding of specific intent.

Kurashev additionally argues that the Syrian government did not qualify as a "government" for purposes of Section 2332b(g)(5)(A).  But he did not raise this claim below, so it is reviewed for plain error.  And he fails to identify any error, plain or otherwise.  It is undisputed that the term "government" in Section 2332b(g)(5)(A) includes foreign governments.  And the Syrian government led by President Bashar al-Assad satisfied the ordinary meaning of the word "government."  Kurashev asks this Court to adopt a novel limiting definition.  But Congress declined to adopt any such

12

limitation. And Kurashev identifies no basis for overriding Section 2332b(g)(5)(A)'s plain text, nor any support for the unworkable interpretation he advances.

**II.** The district court did not commit procedural error in applying U.S.S.G. § 3A1.4. Kurashev argues on appeal that the court did not adequately explain its application of the enhancement. But the record belies that new claim: The district court correctly applied Section 2332b(g)(5)(A)'s intent standard, and it clearly explained its intent finding. There was thus no error, much less plain error.

## STANDARD OF REVIEW

This Court generally "review[s] a district court's interpretation of the Sentencing Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion, and its underlying factual findings for clear error." *United States v. Blackshire*, 98 F.4th 1146, 1155 (9th Cir. 2024). But "[p]lain error review applies to sentencing objections first raised on appeal." *United States v. Herrera*, 974 F.3d 1040, 1045 (9th Cir. 2020). To satisfy the plain error standard, a defendant must show that (1) the district court committed an error, (2) the error was plain, meaning "clear or obvious, rather than subject to reasonable dispute," (3) the error "affected [the defendant's] substantial rights," and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734, 736 (1993)). "Meeting all four prongs [of the plain error standard] is difficult, 'as it should be.'" *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

13

# ARGUMENT

## I.    The District Court Correctly Applied U.S.S.G. § 3A1.4

Kurashev admits to sending thousands of dollars to a terrorist recruiter and fundraiser. Yet he argues his offense did not involve a "federal crime of terrorism," as defined in 18 U.S.C. § 2332b(g)(5). This Court should reject that claim. The district court did not clearly err in finding that Kurashev's donations were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). And it did not plainly err in concluding that the Syrian government led by President Bashar al-Assad qualified as a "government" for purposes of Section 2332b(g)(5)(A).

### A.    The district court did not clearly err in finding specific intent

Section 3A1.4 instructs district courts to increase a defendant's offense level and criminal history category where the offense at issue "is a felony that involved, or was intended to promote, a federal crime of terrorism," with "federal crime of terrorism" given the meaning it has in 18 U.S.C. § 2332b(g)(5). U.S.S.G. § 3A1.4 & cmt. n.1. Section 2332b(g)(5), "in turn, defines a '[f]ederal crime of terrorism' to mean an offense that meets the following two requirements: (1) the offense 'is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct'; and (2) the offense is a violation of one of a lengthy list of specifically enumerated statutory provisions." *United States v. Ehmer*, 87 F.4th 1073, 1141 (9th Cir. 2023), *abrogated on other grounds by United States v.*

*Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024) (en banc). Because 18 U.S.C. § 2339B is one of the enumerated statutes, the only question here is whether the district court clearly erred in finding that Kurashev's violation of Section 2339B satisfied the first requirement, which courts describe as a "specific intent" requirement. *United States v. Alhaggagi*, 978 F.3d 693, 699–700 (9th Cir. 2020); *see also, e.g.*, *United States v. Blanco*, 102 F.4th 1153, 1166 (11th Cir. 2024) (reviewing Section 3A1.4 specific intent finding for clear error); *United States v. Siddiqui*, 699 F.3d 690, 709 & n.14 (2d Cir. 2012) (same).

In contesting the district court's finding, Kurashev suggests that the relevant question under Section 2332b(g)(5)(A) is whether he had the "specific intent to support violent activities," AOB at 28, or the "specific intent to engage in intimidation, retaliation, or coercion," AOB at 32. Neither statement of the standard is correct. The question is whether Kurashev's "offense" was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A); *see also Alhaggagi*, 978 F.3d at 693 ("The appropriate focus … is not 'on the defendant, but on his "offense[.]"'" (quoting *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010))). The requisite intent must be proven by a preponderance of the evidence. *See Lucas*, 101 F.4th at 1163 (preponderance of the evidence standard applies to factual findings under the guidelines). And the standard can be satisfied if the offense at issue "involved an attempt to change Government policy through 'intimidation or coercion,'" even if the

defendant's conduct did not involve "acts dangerous to human life." *Ehmer*, 87 F.4th at 1143 (citation modified) (applying the same language in note 4 to Section 3A1.4).

Applying Section 2332b(g)(5)(A)'s standard to the facts of this case, the district court reasonably found specific intent.[4] Kurashev knew that HTS was a designated terrorist organization. He knew that HTS was fighting the Syrian government. *Cf.* AOB at 27 ("Kurashev knew of HTS's violent activities"). He knew that Fayzimatov supported HTS's insurgent activities. *See, e.g.*, 1-ER-37 (finding that statements made by Fayzimatov were "clearly directed towards undermining the Syrian government" and that the evidence established Kurashev was "aware of what Fayzimatov was doing"). And he knew that donations to Fayzimatov were used to further those activities. *See, e.g.*, PSR ¶ 19 (forwarding post that said "[e]quip the warrior," listing prices of various military equipment); SER-43 (forwarding video that said funds raised were used to "equip over a hundred mujahids"). Kurashev also told Fayzimatov that he wished he could join the fight in Syria as a mujahid. PSR ¶ 13. And when

---

[4] The district court applied a clear and convincing standard of proof based on *Alhaggagi*, 1-ER-16, which itself relied on *United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001). *See Alhaggagi*, 978 F.3d at 700–01 (citing *Jordan*, 256 F.3d at 926). But this Court has since held "that clear and convincing evidence is not required for factual findings under the Guidelines, even when potentially large enhancements are at stake," overruling *Jordan* and related cases. *Lucas*, 101 F.4th at 1163; *see also id.* at 1161. A preponderance of the evidence standard thus applies to the question of intent. *See United States v. Kurns*, 129 F.4th 589, 594–95 (9th Cir. 2025) (applying preponderance standard on appeal based on intervening decision in *Lucas*). The distinction between the two standards of proof makes no practical difference here, though, because the district court (correctly) found even the heightened standard of proof satisfied.

16

Fayzimatov told Kurashev that donating would mean "using your assets to carry out jihad," Kurashev responded: "Yes, brother, I am trying to act with only this intent." PSR ¶ 28. Thus, contrary to Kurashev's claim (AOB at 27) that evidence of specific intent was "nonexistent," his "own words" supported the district court's finding. 1-ER-44; *see also, e.g., United States v. Ali*, 799 F.3d 1008, 1031–32 (8th Cir. 2015) (affirming Section 3A1.4 intent finding "based upon [defendants'] contact with al Shabaab members, their vocal support of al Shabaab's efforts to expel [Somalia's government] by force, and their fundraising efforts in support of that cause").

In fact, Kurashev himself later admitted that his actions targeted government conduct, explaining he "felt [he] needed to do something" in response to the Russian government's intervention in Syria in support of the government led by Assad. PSR ¶ 34; *see also Alhaggagi*, 978 F.3d at 703 ("Cases applying the retaliation prong rely on evidence that the defendant intended to respond to specific government action."). To be sure, Kurashev also claimed he thought his donations would be used only for media activism—a claim he echoes on appeal by repeatedly suggesting (*e.g.*, AOB at 28) that he sought to support only "non-violent activities." But the district court rejected that claim below, both at sentencing and in its earlier denials of Kurashev's requests for pretrial release. *See* 1-ER-75–76 (finding it "impossible … to square [Kurashev's post-indictment position with] what he was saying at the time" of the offense); 3-ER-183 ("the court did not accept defendant's position that he sought only to support media activism or journalistic efforts"); SER-8, SER-11 (finding

17

Fayzimatov's activities could not "reasonably be characterized as limited to media activism," and that Kurashev donated "for reasons that cannot reasonably be characterized as solely motivated by a support for media activism"). Kurashev identifies no basis for disturbing those factual and credibility findings on appeal.

Kurashev ascribes significance (*e.g.*, AOB at 27) to the fact that he "put no limits" on how the money he donated would be used. But that fact only further supports the district court's application of the enhancement: He sent money to a terrorist fundraiser without doing anything to ensure the money would not be used to further terrorist activity—or, as Kurashev himself puts it (AOB at 3), he "left it to Fayzimatov to decide what to do with the funds," even though he knew that Fayzimatov helped fund HTS's terrorism. Those are circumstances that a district court could reasonably interpret as probative of specific intent. *Cf. United States v. Barlow*, 83 F.4th 773, 780 (9th Cir. 2023) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985))).

In any event, Kurashev didn't just know of a mere "*risk* funds [would] be used for violence." AOB at 30 (emphasis added). Instead, as discussed, he received and shared content from Fayzimatov that confirmed funds Fayzimatov raised were *in fact* used that way. *See, e.g.*, SER-43 (donations used to "equip over a hundred mujahids"); *see also supra* p. 16. That record evidence distinguishes this case from *Alhaggagi*, which involved a defendant who "opened six social media accounts on two occasions for

18

people he understood to be ISIS sympathizers." 978 F.3d at 701. Although the defendant in *Alhaggagi* participated in a chatroom that included pro-ISIS and anti-U.S. posts, "there [was] no evidence that [he] saw those posts, opened the accounts because of those posts, or had contact with the authors of the posts." *Id.* at 703. By contrast, Kurashev closely followed Fayzimatov's extremist content and fundraising efforts, communicated with him directly about that content and fundraising, and sent money to Fayzimatov in response. *See supra* pp. 5–8. Moreover, while in *Alhaggagi* there was no evidence the defendant knew "how the accounts he opened were to be used," 978 F.3d at 703, the evidence here—including Kurashev's own statements— indicates Kurashev knew Fayzimatov was soliciting funds to support HTS's fight against the Syrian government. *Cf. id.* at 703 n.10 (distinguishing cases "where the evidence underlying the offenses includes defendants' statements specifically demonstrating the intent to intimidate and coerce government conduct"). The district court accordingly did not err, much less clearly err, in finding specific intent.

## B. The Syrian government led by Assad was a "government"

To get out from under the district court's finding of specific intent, Kurashev advances a new argument on appeal: that the Assad government did not qualify as a "government" for purposes of Section 2332b(g)(5)(A). Because he did not raise this claim below, *see* AOB at 39, plain error review applies. *Herrera*, 974 F.3d at 1045. "[A]n error is not plain unless it is 'clear' or 'obvious.'" *United States v. Smith*, 424 F.3d 992, 1002 (9th Cir. 2005) (quoting *Olano*, 507 U.S. at 734); *see also supra* p. 13.

19

Kurashev asks this Court (AOB at 39) to review his claim de novo on the ground that it raises a pure question of law. But it is not clear that any such exception to plain error review remains good law. *See United States v. Castillo*, 69 F.4th 648, 653 (9th Cir. 2023) ("the assumption that de novo review applies to purely legal questions that have not been argued below has been called into question both by our court and by the Supreme Court").[5] And even if it does, the exception would not apply here based on Kurashev's own argument, which presents the issue as a mixed question of fact and law. *See* AOB at 35–38 (relying on facts outside the record to argue Syria's government was not a government); *cf., e.g.*, *United States v. Yijun Zhou*, 838 F.3d 1007, 1011–12 (9th Cir. 2016) (mixed question of fact and law where argument required applying a statutory standard "to the particular factual details in the record—the indictment, the plea colloquy transcript, the presentence report, and the sentencing transcript"). "To the extent [this Court has] discretion to apply a different standard of review, [it should thus] decline to exercise it here." *Yijun Zhou*, 838 F.3d at 1012.

In any event, Kurashev identifies no error, plain or otherwise. It is undisputed that the term "government" in Section 2332b(g)(5)(A) includes foreign governments.

---

[5] This Court recently granted rehearing en banc on the question of whether a "pure question of law" exception to Federal Rule of Criminal Procedure 52(b) should be overruled. *See United States v. Gomez*, 115 F.4th 987 (9th Cir. 2024), *reh'g en banc granted*, *opinion vacated*, 133 F.4th 1083 (9th Cir. 2025) (mem.); *see also* Government's Petition for Rehearing En Banc at 3, *United States v. Gomez*, No. 23-435 (9th Cir. Nov. 18, 2024), Dkt. 45. Argument in *Gomez* is currently scheduled for the week of September 8, 2025. *See* Order, *Gomez*, No. 23-435 (Apr. 17, 2025), Dkt. 52.

*See, e.g., United States v. Khan*, 938 F.3d 713, 718 (5th Cir. 2019) (Section 2332b(g)(5) "refers broadly to 'government,' foreign or otherwise" (citation modified)).[6]  Courts have accordingly applied the Section 3A1.4 enhancement in cases where, as here, a defendant's offense was directed at the Assad-led Syrian government, including through support of HTS.  *See United States v. Kasimov*, No. 22-1329, 2024 WL 4541061, at *4 (2d Cir. Oct. 22, 2024) (unpub.) (enhancement applied where defendant's conduct targeted "the governments of Iraq and Syria"); *United States v. Giampietro*, 614 F. Supp. 3d 612, 622 (M.D. Tenn. 2022) (enhancement applied where conduct "was calculated to influence or affect the conduct of the Syrian government (and perhaps the United States Government) through Defendant's material support of HTS").

Kurashev proposes this Court break new ground, adopting an interpretation of "government" that would conveniently exclude the Assad government.  But courts must interpret an undefined statutory term "pursuant to its ordinary meaning."  *United States v. Cox*, 963 F.3d 915, 920 (9th Cir. 2020).  And the Assad government plainly satisfied the ordinary meaning of "government."  *See, e.g.*, Webster's Third New International Dictionary 982 (2002) (defining government as "the body of persons that constitutes the governing authority of a political unit or organization"); *United*

---

[6] *See also, e.g., Ali*, 799 F.3d at 1032 (enhancement applied where "offenses were calculated to influence or affect" Somalia's Transitional Federal Government); *United States v. Stewart*, 590 F.3d 93, 144 (2d Cir. 2009) (enhancement applied where conduct was "calculated to affect the conduct of the Egyptian government"); *United States v. Assi*, 428 F. App'x 570, 574 (6th Cir. 2011) (unpub.) (collecting similar cases).

21

*States v. Alexander*, 287 F.3d 811, 820 (9th Cir. 2002) (relying on related Webster's definition of "government" in interpreting guidelines provision), *abrogated on other grounds by United States v. Plouffe*, 445 F.3d 1126, 1131 (9th Cir. 2006); *United States v. Ansberry*, 976 F.3d 1108, 1128 n.11 (10th Cir. 2020) (interpreting "government" in Section 2332b(g)(5)(A) as "[t]he governing power in a state; the body of persons charged with the duty of governing" (quoting 6 Oxford English Dictionary 712 (2d ed. 1989)). Kurashev does not contend otherwise. In fact, his lead authority in effect concedes the point, applying the label of "government" to any Syrian government led by Assad. *See* Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, § 1233, 138 Stat. 1773, 2109 (U.S. policy "not to recognize or normalize relations with any *government* of Syria that is led by Bashar al-Assad" (emphasis added)).

Kurashev argues (AOB at 34) that the Sentencing Commission nonetheless "cannot have intended to treat the Assad regime as a government for purposes of" Section 3A1.4. But because Section 3A1.4 incorporates Section 2332b(g)(5)'s definition, it is Congress's intent that matters. And the statutory context indicates that Congress intended breadth, consistent with ordinary meaning. Had Congress sought a narrower meaning, "it easily could have drafted language to that effect." *Gallardo ex rel. Vassallo v. Marstiller*, 596 U.S. 420, 429 (2022) (citation modified). Indeed, surrounding sections of the code demonstrate that Congress knows how to narrow similar terms when it wants to. *See, e.g.*, 18 U.S.C. § 2332b(b)(1)(C) ("United States

Government"); *id.* § 2332d(a) ("government of that country"); *id.* § 2332f(e)(12) (defining "state" as having "the same meaning as that term has under international law"); *see also United States v. DeAmaris*, 406 F. Supp. 2d 748, 750 (S.D. Tex. 2005) ("Congress was very precise in its use of the term 'government'" in the relevant chapter of the U.S. Code). But in Section 2332b(g)(5)(A), Congress referred to the "conduct of government" without limitation. And courts "must give effect to … Congress' choice to include limiting language in some provisions but not others." *Gallardo*, 596 U.S. at 431; *cf. United States v. Salim*, 549 F.3d 67, 78 (2d Cir. 2008) ("Congress could have defined 'Federal crime of terrorism' to include a requirement that the offense conduct transcend national boundaries, but it did not.").

In asking this Court (AOB at 33) to adopt a "limiting definition," Kurashev invokes the rule of lenity and the absurdity canon. But the rule of lenity "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *Shular v. United States*, 589 U.S. 154, 165 (2020) (citation modified); *see also United States v. Garcia-Jimenez*, 623 F.3d 936, 944–45 (9th Cir. 2010) (rule applies to the guidelines only where "there is a grievous ambiguity or uncertainty" (citation modified)). And Kurashev identifies no ambiguity in the meaning of "government" as applied to the Assad government. *Cf. Salim*, 549 F.3d at 78 n.2 (declining to apply rule of lenity in interpreting Section 2332b(g)(5)). As for the absurdity canon, it poses "an extremely high bar," "confined to situations where it is quite impossible that Congress could have intended the result." *United States v.*

*Torres*, 995 F.3d 695, 705 (9th Cir. 2021) (citation modified); *see also Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 271 (2019) ("a result that may seem odd is not absurd" (citation modified)). Kurashev fails to clear that bar here. In fact, he largely accepts that Congress could have reason to proscribe criminal conduct targeted at foreign governments without regard to the relationship between those governments and the United States. *See* AOB at 38 ("Kurashev does not contend individuals may freely attack . . . non-governmental regimes to which the United States is opposed").

Moreover, Kurashev "points to no other plausible interpretation of the text"— a failure that independently precludes application of any absurdity canon. *Cochise*, 587 U.S. at 271. He invokes (AOB at 34–35) the definition of "foreign government" at 18 U.S.C. § 11. But he correctly acknowledges that that definition (of a separate statutory term) does not govern here. And, even if it did, the Section 11 definition does more to undermine his position than to support it: It defines "foreign government" to include "*any* government, faction, or body of insurgents within a country," 18 U.S.C. § 11 (emphasis added)—a scope that plainly covers the Assad government. And it encompasses all such governments "irrespective of recognition by the United States," *id.*—directly contradicting Kurashev's repeated claim (*e.g.*, AOB at 19) that U.S. recognition is relevant to deciding what counts as a "government."

Unable to rely solely on recognition, Kurashev pivots (AOB at 34) to a three-factor test that he claims renders the Assad government not a "government" for purposes of Section 2332b(g)(5)(A). But his gerrymandered test does not provide a

24

plausible interpretation of the relevant statutory text: Kurashev acknowledges that the standard is good for one use only, dismissing (AOB at 33–34) a more broadly applicable definition as "unnecessary" under the circumstances. And even if it were designed to apply beyond the facts of this one case, the standard that Kurashev invents would prove unworkable in practice, requiring district courts to make complicated and contested findings regarding U.S. foreign relations as part of routine sentencing decisions. For that reason, and contrary to the contention of amicus (MLFA Br. at 32–38), it is Kurashev's interpretation —not the government's—that would present separation of powers concerns. *Cf. United States v. Assi*, 428 F. App'x 570, 575 (6th Cir. 2011) (unpub.) ("Surely Congress did not intend for a United States district court judge to determine whether a foreign state is complying in full with its international obligations before determining whether a person who has pled guilty to providing support to a foreign terrorist organization is subject to § 3A1.4.").

This appeal does not concern the conduct of the Assad government, no matter how condemnable. Nor does it involve application of Section 3A1.4 to an offense that targeted an individual "warlord" or "terrorist." AOB at 33. The narrow issue presented is whether the district court plainly erred in applying the enhancement to an

offense that targeted the Assad-led Syrian government.  Because the plain text of

Section 2332b(g)(5)(A) makes clear the answer is no, this Court should affirm.[7]

### C.  Amicus's policy objections are irrelevant to the question presented

Amicus Muslim Legal Fund of America objects to application of Section 3A1.4

on several additional grounds not raised by Kurashev.  For the most part, amicus's

arguments concern matters of policy.  *See, e.g.*, MLFA Br. at 25 (arguing that the

evidence "strongly discredits the logic of the" enhancement).  Those objections are

better addressed to the Sentencing Commission and to Congress, which directed the

creation of a sentencing enhancement for terrorism-related offenses; they provide no

basis for relief here.  *See United States v. Tankersley*, 537 F.3d 1100, 1113 (9th Cir. 2008)

(Congress sought "to impose a harsher punishment" on certain defendants in creating

the enhancement); *cf. United States v. Sharma*, 119 F.4th 1141, 1147 (9th Cir. 2024)

("Although [certain sentencing enhancements] may be debatable on policy grounds,

those debates are not the concern of a court conducting rational basis review.").  To

the extent that amicus purports to advance claims that are legal in nature and

applicable to this case specifically, any such claims have been waived.  *See Zango, Inc. v.*

*Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("An amicus curiae

---

[7] This Court should also deny Kurashev's request for judicial notice, for the
reasons provided in the government's opposition.  Dkt. 39 at 2–6.  But Kurashev's
challenge to his sentence would fail even if this Court were to grant the request, as the
documents he identifies are not relevant to the legal questions presented.  *Id.* at 3–6.

generally cannot raise new arguments on appeal, and arguments not raised by a party in an opening brief are waived." (citation omitted)).

Nonetheless, to provide this Court with a more complete picture of some of the issues discussed by amicus, the government offers two points in response.

*First*, courts have rejected facial challenges to Section 3A1.4 like those advanced by amicus. *See, e.g.*, *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003) ("Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time."); *Ali*, 799 F.3d at 1031 ("adopt[ing] the Second Circuit's well-reasoned conclusion . . . that the § 3A1.4 enhancement is in no way irrational" (citation modified)). This Court itself has recognized that terrorism cases present a unique risk of recidivism. *See United States v. Ressam*, 679 F.3d 1069, 1091 (9th Cir. 2012) (en banc) ("Terrorists, even those with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." (quoting *United States v. Jayyousi*, 657 F.3d 1085, 1117 (11th Cir. 2011))).

*Second*, amicus's arguments have particularly little purchase in this case given the sentencing record. Kurashev has not claimed that the district court's application of the enhancement was in any way discriminatory. And he has not challenged his ultimate 144-month sentence as substantively unreasonable. While amicus argues

27

(MLFA Br. at 14) that Section 3A1.4 "undermines" 18 U.S.C. § 3553(a)'s sentencing factors, the district court demonstrated the opposite below, correctly calculating the advisory guidelines range before separately conducting the individualized assessment required by Section 3553(a). *See supra* pp. 10–12. In fact, contrary to amicus's assertion (MLFA Br. at 20) that Kurashev was "sentenced as if a career offender," the district court found that "a criminal history category of VI substantially overrepresent[ed] the seriousness of [his] criminal history," 1-ER-75, and varied downward accordingly, 1-ER-79. *Cf. United States v. Sherif*, 107 F.4th 309, 315 (4th Cir. 2024) ("Far from ignoring [defendant's] argument regarding the overly punitive effect of the terrorism enhancement, the district court explicitly credited it by granting [defendant] a significant downward variance in his sentence.").

## II. The District Court Did Not Commit Procedural Error

While Kurashev acknowledges (AOB at 41) that the "district judge considered this case carefully," he also maintains the district court failed to adequately explain its application of Section 3A1.4. Because he did not raise this claim below, *see* AOB at 42, the issue is reviewed for plain error. *United States v. Sandoval-Orellana*, 714 F.3d 1174, 1180 (9th Cir. 2013) (plain error review applies to unpreserved claim "that the district court procedurally erred by failing to adequately explain its sentence").

Kurashev invokes (AOB at 42) an exception to plain error review for pure questions of law. But, as above, even if that exception remains good law, *but see supra* p. 20 & n.5, it would not support de novo review here. The procedural issue

Kurashev identifies is not purely legal. *See, e.g.*, *United States v. Wijegoonaratna*, 922 F.3d 983, 989–90 (9th Cir. 2019) (claim that district court failed to make required factual findings is a mixed question of law and fact). And the government would suffer prejudice from de novo review "as a result of the failure to raise the issue below." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 426 (9th Cir. 2011). Had Kurashev objected at sentencing, the government would have responded, and the district court could have addressed the claim. *See United States v. Rubalcaba*, 811 F.2d 491, 493 (9th Cir. 1987) (prejudice if the government would "have presented new evidence or made new arguments"). Kurashev's failure to object deprived the district court of that "opportunity to resolve the matter." *In re Perez*, 30 F.3d 1209, 1213 (9th Cir. 1994).

In any event, Kurashev's claim would fail even under de novo review, as the district court made no error requiring correction. Kurashev does not contend that the district court failed to respond to any of his arguments against applying Section 3A1.4. Nor does he claim the court's explanation of his ultimate sentence was insufficient "to permit meaningful appellate review." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc). Instead, he argues (AOB at 41) that "[t]he judge made no finding of 'specific intent'" before applying Section 3A1.4.

The record belies Kurashev's claim. The district court correctly and clearly identified the standard under Section 2332b(g)(5)(A) as whether "Kurashev's offense [was] calculated to influence or affect the conduct of government by intimidation or coercion or to retaliate against government conduct." 1-ER-33. And the court found

29

that standard satisfied, concluding that "Kurashev's own words support[ed] [its] finding that he had the requisite intent for [the] enhancement." 1-ER-44. To the extent Kurashev suggests that the district court erred by failing to say the words "specific intent," he cites no support for any such magic words requirement. *Cf. United States v. Rodriguez-Castro*, 641 F.3d 1189, 1194 (9th Cir. 2011) ("the district court is not required to . . . use specific phrases during the sentencing process").

The record similarly belies Kurashev's contention (AOB at 42) that he was "prevented . . . from contesting" the district court's finding of specific intent. After the district court cited Kurashev's communications with Fayzimatov in support of its finding, counsel for Kurashev objected, claiming the cited statements said "nothing about . . . changing what the Syrian government is doing by intimidation, coercion or retaliating." 1-ER-44–45. In response, the district court determined that, when "taken in the context of the other communications with Mr. Fayzimatov [and] sending funds to Mr. Fayzimatov," Kurashev's statements established an intent to "affect[] . . . and to try to undermine what the Syrian government was doing." 1-ER-44–45. In other words, counsel affirmatively *did* contest the intent finding; the court simply rejected counsel's argument based on the record evidence before it.

The district court's careful application of Section 3A1.4 to Kurashev's offense distinguishes this case from the out-of-circuit authority he cites. In *United States v. Arcila Ramirez*, 16 F.4th 844 (11th Cir. 2021), the district court "made *no* fact findings as to the § 3A1.4 enhancement" but instead "appeared to believe the mere fact that

30

[the defendant] had pled guilty [to violating Section 2339B(a)(1)] per se triggered the terrorism enhancement." *Id.* at 854. And in *United States v. Fidse*, 778 F.3d 477 (5th Cir. 2015), the district court made no "factual findings *or* legal conclusions concerning the terrorism enhancement." *Id.* at 480 (emphasis added). Most notably, the court in *Fidse* failed to even identify the "federal crime of terrorism" that it relied on to apply the enhancement. *Id.* at 482. The district court in this case committed no comparable error, let alone plain error. There is accordingly no basis to remand for resentencing.

## CONCLUSION

For the foregoing reasons, this Court should affirm Kurashev's sentence.

Respectfully submitted,

KIMBERLY A. SANCHEZ
*Acting United States Attorney*
*Eastern District of California*

HEIKO P. COPPOLA
*Assistant U.S. Attorney*

JOHN A. EISENBERG
*Assistant Attorney General*
*for National Security*

*s/ Gavan W. Duffy Gideon*
JOSEPH P. MINTA
GAVAN W. DUFFY GIDEON
*Attorneys, Appellate Section*
*National Security Division*
*U.S. Department of Justice*
*950 Pennsylvania Ave. NW*
*Washington, DC 20530*
*(202) 320-0621*
*gavan.gideon@usdoj.gov*

July 2025

31

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the government states that it knows of no related case pending in this Court.

*s/ Gavan W. Duffy Gideon*
Gavan W. Duffy Gideon

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-2874

I am the attorney or self-represented party.

**This brief contains** | 7,941 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Gavan W. Duffy Gideon | **Date** | 07/23/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

**ADDENDUM**

# TABLE OF CONTENTS

**<u>Page</u>**

18 U.S.C. § 2332b(g)(5).........................................................................A1

U.S.S.G. § 3A1.4...................................................................................A3

<u>18 U.S.C. § 2332b(g)(5)</u>

§ 2332b.  **Acts of terrorism transcending national boundaries**

. . .

(g) DEFINITIONS.—As used in this section—

. . .

(5) the term "Federal crime of terrorism" means an offense that—

(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and

(B) is a violation of—

(i) section 32 (relating to destruction of aircraft or aircraft facilities), 37 (relating to violence at international airports), 81 (relating to arson within special maritime and territorial jurisdiction), 175 or 175b (relating to biological weapons), 175c (relating to variola virus), 229 (relating to chemical weapons), subsection (a), (b), (c), or (d) of section 351 (relating to congressional, cabinet, and Supreme Court assassination and kidnaping), 831 (relating to nuclear materials), 832 (relating to participation in nuclear and weapons of mass destruction threats to the United States)[,] 842(m) or (n) (relating to plastic explosives), 844(f)(2) or (3) (relating to arson and bombing of Government property risking or causing death), 844(i) (relating to arson and bombing of property used in interstate commerce), 930(c) (relating to killing or attempted killing during an attack on a Federal facility with a dangerous weapon), 956(a)(1) (relating to conspiracy to murder, kidnap, or maim persons abroad), 1030(a)(1) (relating to protection of computers), 1030(a)(5)(A) resulting in damage as defined in 1030(c)(4)(A)(i)(II) through (VI) (relating to protection of computers), 1114 (relating to killing or attempted killing of officers and employees of the United States), 1116 (relating to murder or manslaughter of foreign officials, official guests, or internationally protected persons), 1203 (relating to hostage taking), 1361 (relating to government property or contracts), 1362 (relating to destruction of communication lines, stations, or systems), 1363 (relating to injury to buildings or property within special maritime and territorial jurisdiction of the United States), 1366(a) (relating to destruction of an energy facility), 1751(a), (b), (c), or (d) (relating to Presidential and Presidential staff assassination and kidnaping), 1992 (relating to terrorist attacks and other acts of violence against railroad carriers and against mass transportation systems on land, on water, or through the air), 2155 (relating to destruction of national defense materials, premises, or utilities), 2156 (relating to national defense material, premises, or utilities),

A1

2280 (relating to violence against maritime navigation), 2280a (relating to maritime safety), 2281 through 2281a (relating to violence against maritime fixed platforms), 2332 (relating to certain homicides and other violence against United States nationals occurring outside of the United States), 2332a (relating to use of weapons of mass destruction), 2332b (relating to acts of terrorism transcending national boundaries), 2332f (relating to bombing of public places and facilities), 2332g (relating to missile systems designed to destroy aircraft), 2332h (relating to radiological dispersal devices), 2332i (relating to acts of nuclear terrorism), 2339 (relating to harboring terrorists), 2339A (relating to providing material support to terrorists), 2339B (relating to providing material support to terrorist organizations), 2339C (relating to financing of terrorism), 2339D (relating to military-type training from a foreign terrorist organization), or 2340A (relating to torture) of this title;

(ii) sections 92 (relating to prohibitions governing atomic weapons) or 236 (relating to sabotage of nuclear facilities or fuel) of the Atomic Energy Act of 1954 (42 U.S.C. 2122 or 2284);

(iii) section 46502 (relating to aircraft piracy), the second sentence of section 46504 (relating to assault on a flight crew with a dangerous weapon), section 46505(b)(3) or (c) (relating to explosive or incendiary devices, or endangerment of human life by means of weapons, on aircraft), section 46506 if homicide or attempted homicide is involved (relating to application of certain criminal laws to acts on aircraft), or section 60123(b) (relating to destruction of interstate gas or hazardous liquid pipeline facility) of title 49; or

(iv) section 1010A of the Controlled Substances Import and Export Act (relating to narco-terrorism).

A2

## U.S.S.G. § 3A1.4

### § 3A1.4.  Terrorism

(a)  If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b)  In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

### Commentary

**Application Notes:**

1.  **"Federal Crime of Terrorism" Defined.**—For purposes of this guideline, "federal crime of terrorism" has the meaning given that term in 18 U.S.C. § 2332b(g)(5).

    . . .

3.  **Computation of Criminal History Category.**—Under subsection (b), if the defendant's criminal history category as determined under Chapter Four (Criminal History and Criminal Livelihood) is less than Category VI, it shall be increased to Category VI.

4.  **Upward Departure Provision.**—By the terms of the directive to the Commission in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996, the adjustment provided by this guideline applies only to federal crimes of terrorism.  However, there may be cases in which (A) the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B); or (B) the offense involved, or was intended to promote, one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), but the terrorist motive was to intimidate or coerce a civilian population, rather than to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.  In such cases an upward departure would be warranted, except that the sentence resulting from such a departure may not exceed the top of the guideline range that would have resulted if the adjustment under this guideline had been applied.

A3